DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ARK REAL ESTATE SERVICES, INC.,** a Florida corporation,
Appellant,

v.

**21st MORTGAGE CORPORATION,** a Foreign corporation,
Appellee.

No. 4D20-122

[July 29, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Okeechobee County; Laurie E. Buchanan, Judge; L.T. Case No. 47-2014-CA-000472.

Charles Wender, Attorney-at-Law, Chartered, Boca Raton, for appellant.

Sonia Henriques McDowell of Quintairos, Prieto, Wood & Boyer, P.A., Orlando, for appellee.

GROSS, J.

A purchaser of real property at a foreclosure sale sued a lender that repossessed a mobile home from the land after the sale. The purchaser claimed that the foreclosure judgment extinguished the lender's lien on the mobile home. We hold that the lender's lien survived the foreclosure sale and that the circuit court properly entered judgment against the purchaser on its claims of conversion and civil theft.

In 2007, Craig Gopher took out a loan from Seacoast National Bank to purchase a parcel of real property (the "Gopher land"). To finance the purchase, Gopher executed a note and mortgage in favor of Seacoast. The mortgage contained an after-acquired property clause, so that the mortgage encumbered the Gopher land, together with "all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property."

Several years after this purchase, Gopher entered into a financing agreement with 21st Mortgage Corporation to purchase a mobile home.

The financing agreement gave 21st Mortgage a security interest in the mobile home.  The financing agreement stated:

> Borrower agrees that the Manufactured Home is, and shall remain, during the term of this Note, personal property. Unless Lender gives prior written consent, Borrower shall not allow the Manufactured Home to become a part of real estate or to lose its status as personal property under applicable law.

21st Mortgage filed a notice of its lien with the Department of Motor Vehicles; the Department issued a certificate of title showing 21st Mortgage as the first lienholder on the mobile home.  21st Mortgage also recorded in the county records a "Notice of Security Interest In Manufactured Home Pursuant to Florida Statute Section 197.502(4)(g)."[1]

In 2013, Seacoast filed a complaint to foreclose its mortgage on the Gopher land.  Seacoast named various defendants, including Gopher and 21st Mortgage.  Seacoast alleged that it held a mortgage on the real property described in the mortgage, that Gopher owned and was in possession of the property, and that Gopher had defaulted on the loan. Paragraph 11 of the complaint contained these allegations concerning 21st Mortgage:

> 21st MORTGAGE CORPORATION, may claim some interest in and to the subject property by virtue of a Notice of Security Interest in Manufactured Home, recorded on June 13, 2011, in Official Records Book 702 at Page 1, Okeechobee County, Florida, or may otherwise claim an interest in the subject propert(ies); however, any such right, title or interest in and to said property is subordinate, junior, and inferior to the lien of Plaintiff's Original Mortgage Documents.

The complaint contained no other reference to the mobile home and did not identify the mobile home by VIN number.  Similarly, the notice of lis pendens did not include any reference to the mobile home in the legal description.

---

[1] Section 197.502(4), Florida Statutes (2013), contains a list of those persons who are to be notified prior to a tax sale.  Subsection (g) requires that such notice be given to "[a]ny lienholder of record who has recorded a lien against a mobile home located on the property described in the tax certificate if an address appears on the recorded lien and if the lien is recorded with the clerk of the circuit court in the county where the mobile home is located."

21st Mortgage raised no defenses in the Seacoast foreclosure action.

In August 2013, the circuit court entered a final judgment of foreclosure in favor of Seacoast. The judgment stated that Seacoast "holds a lien for the total sum superior to all claims or estates of defendant(s)" on the Gopher land.

On September 25, 2013, Ark purchased the Gopher land at a foreclosure sale for $68,100. Ark's principal testified that he believed the mobile home was being sold with the Gopher land "because 21st Mortgage was a named defendant in the foreclosure [action] and they never bothered to answer." Based on the final judgment of foreclosure, Ark's principal thought that 21st Mortgage's lien would be extinguished by the foreclosure sale. Ark would not have paid $68,100 if its principal knew that the mobile home was not included with the property as part of the sale.

Ark did not run a title search or check DMV records before bidding on the Gopher land.

On September 26, 2013, the day after the foreclosure sale, a dispute arose between Ark and 21st Mortgage over whether the foreclosure sale included the mobile home.

That same day, 21st Mortgage began to repossess the mobile home. The repossession took six days. The mobile home had three bedrooms and two baths, was anchored to the land, and was hooked up to water, sewer, and electric services. 21st Mortgage later sold the mobile home for around $38,000.

Ark unsuccessfully moved to vacate the foreclosure sale. Ark then sued 21st Mortgage for damages arising out of the repossession of the mobile home, asserting claims for conversion and civil theft.

After a non-jury trial, the circuit court entered judgment in favor of 21st Mortgage. The court concluded that the mobile home was not included in the Seacoast foreclosure, so Ark did not acquire any ownership interest in the mobile home when it purchased the Gopher land at the foreclosure sale. The court noted that none of the pleadings in the foreclosure made reference to the mobile home and that 21st Mortgage had perfected its lien on the mobile home according to Florida law. Citing to *Barnett Bank of Clearwater, N.A. v. Rompon*, 377 So. 2d 981, 983 (Fla. 2d DCA 1979), the court observed that when a mobile home is located on real property subject to foreclosure, a check of the records of the Department of Motor Vehicles is advisable. The court held that 21st Mortgage "maintained a superior

interest" in the Gopher land, so that it "could not have acted against [Ark's] ownership interest when it repossessed" the mobile home.

On appeal, Ark argues that the mobile home became part of the Gopher land. It contends that the mobile home was permanently affixed to the real estate and was captured by the mortgage's after-acquired property clause, so 21st Mortgage's security interest in the mobile home was extinguished by the final judgment.

We reject Ark's argument for two reasons: (1) under Florida law, the issue of priority is established by statute, so the mobile home's status as a fixture does not impact the validity of the security interest on the mobile home; and (2) the foreclosure action only extinguished competing interests in the Gopher land, not any interest in the mobile home.

The Uniform Commercial Code provides that "[t]he local law of the jurisdiction under whose certificate of title the goods are covered governs perfection . . . and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title." § 679.3031(3), Fla. Stat. (2013).

"[A] mobile home is classified as a motor vehicle under Florida law and must be registered with and titled by the Department." *Rompon*, 377 So. 2d at 983. Perfection of a security interest in a mobile home is controlled by section 319.27(2), Florida Statutes (2013), which provides in relevant part:

> (2) No lien for purchase money or as security for a debt in the form of a security agreement, retain title contract, conditional bill of sale, chattel mortgage, or other similar instrument or any other nonpossessory lien, including a lien for child support, upon a motor vehicle or mobile home upon which a Florida certificate of title has been issued shall be enforceable in any of the courts of this state against creditors or subsequent purchasers for a valuable consideration and without notice, ***unless a sworn notice of such lien has been filed in the department and such lien has been noted upon the certificate of title of the motor vehicle or mobile home. Such notice shall be effective as constructive notice when filed.***

(Emphasis supplied). Once a lender has complied with the statute, there is no requirement that a lender reperfect its security interest in a mobile

4

home "in the event the mobile home subsequently becomes a fixture to real property." *Rompon*, 377 So. 2d at 983.

Confusion sometimes arises because of taxing statutes, which focus on whether a mobile home is permanently affixed to real property. "A mobile home shall be taxed as real property if the owner of the mobile home is also the owner of the land on which the mobile home is permanently affixed." § 193.075(1), Fla. Stat. (2013). Although a mobile home may be classified as real property for taxing purposes, any mobile home classified by a lender as personal property at the time a security interest was granted continues to be so classified for all purposes relating to the security interest as long as any part of the debt remains outstanding. § 320.015(1), (2), Fla. Stat. (2013). Section 320.015 provides as follows:

> (1) A mobile home, as defined in s. 320.01(2), regardless of its actual use, shall be subject only to a license tax unless classified and taxed as real property. A mobile home is to be considered real property only when the owner of the mobile home is also the owner of the land on which the mobile home is situated and said mobile home is permanently affixed thereto. Any prefabricated or modular housing unit or portion thereof not manufactured upon an integral chassis or undercarriage for travel over the highways shall be taxed as real property once it is permanently affixed to real property. This subsection does not apply to a display home or other inventory being held for sale by a manufacturer or dealer of modular housing units.

> (2) Notwithstanding the provisions of subsection (1), *any mobile home classified by a seller or a lender as personal property at the time a security interest was granted therein to secure an obligation shall continue to be so classified for all purposes relating to the loan and security interest, at least as long as any part of such obligation, or any extension or renewal thereof, remains outstanding.* Classification of a mobile home as personal property by a seller or a lender shall not prohibit the owner from having the mobile home classified and taxed as real property under subsection (1).

§ 320.015(1), (2), Fla. Stat. (2013)

21st Mortgage established its lien in the mobile home pursuant to section 319.27(2). The mobile home was identified as personal property

in the loan documents and it did not lose such a classification, even if it was later deemed to be affixed to the land for tax purposes.

*Rompon* is instructive here. There, the Second District held that a lender's security interest, as noted on a mobile home's certificate of title, had priority over any interest in the mobile home obtained by the purchaser of the underlying land at a Sheriff's sale. 377 So. 2d at 983. "It may well be," the court declared, "that the mobile home was so affixed to the land as to become a fixture, but that is not the determinative factor here." *Id.* Instead, the court explained, even when a mobile home becomes a fixture to real property after a lender has financed the purchase of the mobile home, any interest in the mobile home obtained by the purchaser of the land at a Sheriff's sale is subject to the lender's perfected security interest:

> At the time of financing the Rompon purchase of the mobile home, the appellant perfected its security interest according to law. There is no requirement that appellant reperfect its security interest pursuant to Chapter 679 in the event the mobile home subsequently becomes a fixture to real property. Under the provisions of Chapters 319 and 320, Florida Statutes, appellees' interest in the mobile home is subject to appellant's perfected security interest. A check of the records of the Department is required even though a mobile home has actually become a fixture to real property.

*Id.*

In this case, although the mobile home was anchored to the land and hooked up to utilities, the financing agreement between Gopher and 21st Mortgage demonstrated Gopher's intent that the mobile home remain personal property throughout the term of the loan. In fact, the financing agreement prohibited Gopher from allowing the mobile home "to become a part of real estate or to lose its status as personal property under applicable law." In addition, section 320.015(2) expressly states that any mobile home classified by a lender as personal property at the time a security interest was granted shall continue to be so classified for all purposes relating to the security interest as long as any part of the debt remains outstanding.

The Seacoast foreclosure did not impact 21st Mortgage's security interest in the mobile home. The purpose of the complaint was to foreclose on the real property described in the Seacoast Mortgage—the Gopher land—and, with respect to 21st Mortgage, to establish that its interest in

the land, if any, was inferior to that of Seacoast. Nothing in the complaint was directed at the mobile home, which remained personal property outside the scope of the foreclosure. Because the foreclosure judgment on the Gopher land did not terminate 21st Mortgage's security interest in the mobile home, Ark acquired no ownership interest in the mobile home when it purchased the land at the foreclosure sale. 21st Mortgage's repossession of the mobile home therefore violated no property interest of Ark, so the trial court properly entered judgment against Ark on its claims for conversion and civil theft.

To Ark's complaints that it was misled by the foreclosure judgment, we echo the observation of the *Rompon* court. To completely understand the status of a mobile home on real property, it is necessary to check the records of the Department of Motor Vehicles.

*Affirmed.*

WARNER and GERBER, JJ., concur.

*  *  *

**Not final until disposition of timely filed motion for rehearing.**